Richard **RICHARDSON**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 573–86L.

United States Claims Court.

July 11, 1989.

Ray W. Breland, Jr., Bogalusa, La., for plaintiff.

David F. Shuey, Washington, D.C., for defendant.

### OPINION

MARGOLIS, Judge.

The parties to this contract dispute agreed to forego trial and have the court render judgment on the entire record and on the merits. This suit is subject to the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.* The issue for consideration by the court is whether the plaintiff, a lessor of commercial space to the government under a ten-year lease agreement, constructively evicted the government by failing to provide tenantable space.

475, 482 (6th Cir.1970), *cert. denied,* 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46 (1970).

The plaintiff contends that the defendant breached the lease agreement by unjustifiably abandoning allegedly tenantable premises prior to the expiration of the lease. The plaintiff seeks recovery of $186,282, the unpaid balance of rent under the lease, interest and attorney's fees. The defendant asserts that disrepair and inadequate maintenance rendered the leased premises untenantable and that its abandonment of the premises, termination of the lease agreement, and cessation of rental payments were therefore proper. For the reasons set forth below, the court finds for the defendant.

## FACTS

On September 4, 1981, the plaintiff Richard Richardson and the defendant United States, through the General Services Administration (GSA), entered into a ten-year lease, designated GS–07B–11548, for commercial office space in a one-story building at 540B South Columbia Street, Bogalusa, Louisiana, at an annual rental rate of $31,047. By supplemental lease agreement, the effective date of the lease was changed from March 15, 1982 to March 12, 1982, at which time the leased premises were occupied by the Bogalusa office of the Social Security Administration (SSA).

Throughout a four-year occupancy that ended in February 1986, SSA was plagued with persistent and recurring problems due to plaintiff's inadequate maintenance and repair of the leased premises. The most serious problems were recurring roof leaks and water seepage from improperly sealed windows. The plaintiff concedes that these problems existed and recurred.

As a result of the failure to repair roof leaks and water seepage, SSA repeatedly experienced problems and inconveniences, including: being forced to mount computer equipment necessary to the daily operation of the office on boards to protect it from flooding; soaked and slippery carpets; mildewed walls; water-damaged supplies; having to vacate offices due to dampness; and employees being forced to mop water during business hours. Safety hazards were created for SSA clients, many of them elderly, as well as employees.

As administrator of the lease, GSA notified the plaintiff in writing of these deficiencies and requested correction on at least nineteen occasions. The plaintiff does not deny receiving these letters nor does he deny being given numerous opportunities to make necessary repairs to the premises. Although the plaintiff was notified of roof leaks as early as June 21, 1982, the documentary evidence and deposition testimony clearly indicate that the roof leaks and water seepage were not repaired successfully when GSA vacated the premises nearly four years later in February 1986.

Based on the progressive deterioration of the premises as a result of water damage, as well as the plaintiff's violation of numerous other lease provisions, termination of the lease was recommended by a GSA contracting officer on September 23, 1985. At that time, the regional counsel of GSA advised the contracting officer to inspect the building, list all deficiencies, and give plaintiff yet another opportunity to correct the problems. The inspection was conducted on October 22, 1985. The plaintiff was notified by letter dated October 31, 1985, of fourteen deficiencies including roof leaks, water seepage, and sub-standard janitorial service. He was explicitly warned that if the deficiencies were not substantially corrected by November 30, 1985, the government would consider terminating the lease for breach of contract. The plaintiff's failure to make any additional repairs resulted in GSA's finding water leaks and seepage during a subsequent inspection on December 12, 1985. By letter dated February 18, 1986, the GSA contracting officer notified plaintiff of its decision to terminate the lease as of February 28, 1986 and the reasons therefore. GSA vacated the premises on February 5, 1986, but paid rent for the entire month.

The government relied primarily on the following provisions of the lease to terminate the lease agreement on the grounds of constructive eviction:

2. Maintenance of Premises

The Lessor shall maintain the demised premises, including the building and any and all equipment, fixtures, and appurtenances, furnished by the Lessor under this lease *in good repair and tenantable condition,* except in the case of damage arising from the act or the negligence of the Government's agents or employees. (Emphasis added.)

3. Damage by Fire or Other Casualty

In case of partial destruction or damage, so as to render the premises untenantable, as determined by the Government, the Government may terminate the lease by giving written notice to the Lessor within fifteen (15) days thereafter; if so terminated no rent shall accrue to the Lessor after such partial destruction or damage; ...

The plaintiff filed this action on September 15, 1986, alleging that SSA breached the lease agreement by vacating the leased premises "for no sufficient reason," and seeks recovery of the remaining balance of rent under the lease.

Subsequent to the court's denial of cross motions for summary judgment, the parties agreed to forego trial and have the court render judgment on the entire record and on the merits. The record consists of the pleadings, motions, depositions and documents presented in support of each party's position.

## DISCUSSION

A thorough review of the record establishes that plaintiff not only failed to produce evidence in support of his breach of contract claim, but also failed to refute defendant's constructive eviction defense.

The principle of constructive eviction has been recognized and applied by this court. *See Brown v. United States,* No. 13–79 (Ct.Cl. Order of Nov. 17, 1981). "In order to establish a constructive eviction, it is only necessary to show that acts or omissions of [the landlord] substantially interfered with the beneficial use or enjoyment of the premises by [the tenant] and that [the tenant] abandoned the premises within a reasonable time." *Genesco, Inc. v. Monumental Life Insurance Co.,* 577 F.Supp.

72, 83 (D.C.S.C.1983), *aff'd sub nom., Jaffe–Spindler Co. v. Genesco, Inc.,* 747 F.2d 253 (4th Cir.1984). The plaintiff's failure to maintain the premises, in violation of paragraph 2 of the lease interfered with SSA's beneficial use of the office space and seriously impeded SSA's ability to conduct business in a normal fashion. Upon signing the lease, plaintiff assumed the risk of maintenance of the leased premises, absent damage due to the government's negligence. No such negligence is alleged by plaintiff. Water damage resulting from roof leaks similar to that suffered by SSA has been found to constitute constructive eviction. *See Groh v. Kover's Bull Pen, Inc.,* 221 Cal.App.2d 611, 34 Cal.Rptr. 637 (2d Dist.1963); *Genesco,* 577 F.Supp. at 81.

As to the requirement that the premises be abandoned within a reasonable time, in light of the cumulative and recurring nature of the water damage to the premises and the defendant's reasonable reliance on the plaintiff's repeated assurances that repairs were forthcoming, the court finds the defendant's abandonment was within a reasonable time. In a similar case, a tenant's abandonment of premises one year after septic system problems began was found reasonable under the circumstances, and the tenant was not barred from claiming constructive eviction. *Southern Motors, Inc. v. Virginia National Bank,* 73 B.R. 261 (W.D.Va.1987), *aff'd sub nom., Mullins v. Southern Motors, Inc.,* 829 F.2d 1120 (4th Cir.1987). Thus, the court concludes that the defendant was constructively evicted.

The court must next examine whether the defendant properly terminated the lease agreement. Paragraph 3 of the lease expressly grants the government the authority to determine whether leased premises are tenantable and outlines the procedure for lease termination by the government. The government's determination of untenantability, required to invoke the provisions of paragraph 3, was made on or about February 5, 1986, when SSA was forced to vacate the premises. A written termination notice was sent to the plaintiff on February 18, 1986, clearly within the

fifteen-day time period required by the provision. Therefore, the court concludes that the government's termination of the lease was proper.

## CONCLUSION

For the foregoing reasons, the court concludes that the defendant had the authority to terminate the lease, properly and justifiably terminated the lease on the basis of a constructive eviction, and has no further liability to the plaintiff for rent. The Clerk shall dismiss the plaintiff's complaint and enter judgment for the defendant on the merits.