**COCONUT GROVE ENTERTAINMENT, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 98–323 C.**

United States Court of Federal Claims.

Feb. 29, 2000.

Opinion denying reconsideration
March 24, 2000.

---

Dennis Roland Bedard, Miami, FL, for plaintiff.

Michael Francis Kiely, U.S. Department of Justice Civil Div.-Commercial Litigation Br., Washington, DC, for defendant.

## OPINION AND ORDER

HEWITT, Judge.

This is a suit by a former tenant for damages arising out of the termination of its lease by its landlord, the United States Postal Service (the USPS). The issue to be decided is whether the lease is a contract with the United States subject to the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (1994), and, therefore, within the jurisdiction of this court. The CDA does not cover interests in "real property in being." 41 U.S.C. § 602(a)(1). The USPS acquired its

interest as landlord when it purchased the underlying fee interest after foreclosure. Because the lease was an existing agreement between private parties at the time the USPS succeeded to the landlord's interest, the court finds that the lease is an interest in "real property in being" within the meaning of the CDA. This same issue was decided the other way by the United States District Court for the Southern District of Florida (the Federal Court in Florida), resulting in the transfer of the case to this court.

This suit was first filed in 1997 with the Federal Court in Florida. Defendant moved to dismiss for lack of subject matter jurisdiction, alleging that the gravamen of plaintiff's complaint arose under the CDA, a matter within the exclusive jurisdiction of this court.

The Federal Court in Florida agreed with defendant's view of its jurisdiction, dismissed the complaint, and transferred the case to this court. Defendant now challenges this court's jurisdiction on the ground that plaintiff failed to bring this action within twelve months of the date it received the final decision of the contracting officer, as required by § 609(a)(3) of the CDA. Defendant's Motion to Dismiss (Def.'s Mot.) at 11. Defendant also moves to dismiss counts 1 and 3 of the complaint for lack of subject matter jurisdiction on the alternative grounds that the court is not authorized to grant either the declaratory relief requested in count 1 or the *Bivens*-type relief requested in count 3. *Id.* at 14, 16. For the following reasons, the court grants the government's Motion to Dismiss and transfers the case back to the Federal Court in Florida.[1]

I. Background

The lease in dispute is a lease between private parties. On February 15, 1976, Ven-

ture Twenty One, Inc., a Florida corporation, as landlord, and Grove Cinema, Inc. ("Grove Cinema"), a Florida corporation, as tenant, entered a lease for occupancy of premises located at 3199 Grand Avenue, Miami, Dade County, Florida (lease). Plaintiff's Amended Complaint (Pl.'s Am. Compl.) at ¶ 8. The agreed lease term was fourteen years and six months, with three five-year options running through the year 2005. *Id.*

In Paragraph Fifty–Seven of the lease, the landlord agreed to "secure execution by all existing mortgagees of the agreement not to disturb possession of Tenant ...." Def.'s Mot., Appendix (App.) at 12. Paragraph Fifty–Seven further stated that "any subordination of Tenant to any future mortgages shall contain a provision wherein and whereby any future mortgagees could not disturb Tenant's possession ... so long as Tenant observes the covenants of th[e] lease." *Id.*

In 1991, Grove Cinema, as tenant, with the written consent of the landlord, assigned all of its right, title, and interest in the lease to plaintiff, Coconut Grove Entertainment, Inc. (Coconut Grove). Pl.'s Am. Compl. at ¶¶ 10–11. Pursuant to the assignment, Coconut Grove succeeded to Grove Cinema's rights and obligations under the lease (including, of course, its rights to non-disturbance under Paragraph Fifty–Seven). *Id.*

In 1994, the USPS purchased from a lender a foreclosed parcel of real estate which included 3199 Grand Avenue and thereby succeeded to all rights and obligations of the landlord under the 1976 lease.[2] Def.'s Mot. at 3. Coconut Grove's interest as tenant survived foreclosure because of its non-disturbance rights under Paragraph Fifty–Sev-

---

1. Plaintiff properly concedes in its Motion in Opposition to Defendant's Motion to Dismiss that the court does not have subject matter jurisdiction over any of its claims in this case. Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss ("Pl.'s Mot.") at 2. Neither plaintiff's demand for declaratory relief nor its *Bivens* action is within the jurisdiction of the Court of Federal Claims. *See* 28 U.S.C. § 1491(a). *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir.1997); *see also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2. The USPS purchased the parcel of property from the Resolution Trust Corporation as receiver for the Professional Federal Savings Bank, which had succeeded to the interests of Venture Twenty One, Inc. in the lease. Def.'s Mot., App. at 30–32. The parcel is an 85,960 square foot site known as Commodore Plaza, located in the commercial district of the Coconut Grove community in Miami, Florida. Pl.'s Am. Compl. at ¶ 15.

en of its lease.[3] Pl.'s Am. Compl. at ¶ 14.

In 1995, the USPS terminated Coconut Grove's lease for default arising out of the activities of a sublessee of Coconut Grove, The Kitchen Club, Inc. In its letter of termination to Coconut Grove, the USPS identified the ground for termination as the continued operation of the premises by The Kitchen Club without adequate parking as required by the local ordinance. Def.'s Mot., App. at 55–56. The letter advised that the decision to terminate the lease for default was the contracting officer's final decision pursuant to the CDA. *Id.* at 66. The letter also outlined Coconut Grove's appeal rights, specifically stating that the lessee could appeal the termination decision to the Postal Service Board of Contract Appeals within 90 days of receiving the decision or alternatively, file suit in the United States Court of Federal Claims within 12 months of receiving the decision. *Id.*

On August 27, 1997, almost two years after receiving the lease termination letter, Coconut Grove filed suit in the Federal Court in Florida against the USPS, certain named agents of the USPS, and the City of Miami, alleging wrongful eviction and seeking declaratory relief and damages. *Id.* at 67–79. The Federal Court in Florida decided that the CDA covered the lease and transferred the case to this court by order dated January 29, 1998. *Id.* at 99–111.

## II. Discussion

Because the determination of whether subject matter jurisdiction exists is an inflexible threshold matter, the court first addresses the issue of jurisdiction. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)); *see also Spirit Leveling Contractors v. United States,* 19 Cl.Ct. 84, 89 (1989) (citing *Hambsch v. United States,* 857 F.2d 763, 765 (Fed.Cir.1988)).

### A. CDA Jurisdiction Excludes "Real Property in Being"

The Tucker Act defines the jurisdiction of this court with respect to disputes arising under the CDA to include disputes "concerning termination of a contract ... on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2) (1994). *See Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1264 (Fed.Cir.1999); *James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1541–42 (Fed.Cir.1996). The determinative issue here is whether the lease agreement between the parties is a contract within the purview of the CDA.

The CDA applies to any express or implied contract entered into by an executive agency for:

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair or maintenance of real property; or

(4) the disposal of personal property.

41 U.S.C. § 602(a). In deciding whether the CDA applies in this case, the court must determine whether the lease agreement falls within one of the four categories of contract governed by the Act.

In its Order Transferring Case to Court of Claims, the Federal Court in Florida agreed with the position urged by the defendant "that a lease of land is a contract for the 'disposal of personal property' as set forth in section 602(a) and is therefore governed by the CDA." Def.'s Mot., App. at 106. The Federal Court in Florida relied on precedents from many circuits, including decisions of the Court of Appeals for the Federal Circuit, in reaching its decision. We believe, however, that applicable Federal Circuit precedent supports the determination that Coconut Grove's lease is beyond the purview of the CDA and thus outside the jurisdiction of the court.

---

**3.** A letter from USPS dated February 9, 1994 advised Coconut Grove of the purchase and stated that the property would be administered by the USPS office in Memphis, Tennessee. Def.'s Mot., App. at 33.

## B. When is a Lease "Real Property in Being?"

In *Forman v. United States,* 767 F.2d 875 (Fed.Cir.1985), the Federal Circuit considered whether a lease agreement between private party plaintiffs and the USPS fell within the scope of the Disputes Act. Reviewing the applicability of the CDA to the lease agreement before it, the Federal Circuit examined the legislative history of the Act to ascertain what a government contract for the "procurement of property, *other than real property in being*" contemplated. *Forman,* 767 F.2d at 878–79 (emphasis added). Noting that the committee reports are silent regarding what Congress intended the phrase "real property in being" in the CDA to mean, the Federal Circuit stated:

> We are directed to the debate on the floor of the House of Representatives, in which Congressman Kindness remarked: "The procedures and remedies set down in the bill are applicable to all express or implied contracts entered into by the United States for (1) the procurement of property (other than the procurement of real property in being which is governed by the laws of eminent domain)." 124 Cong.Rec. 31,645 (1978). This morsel is not a sufficient explanation of the statute's purpose or meaning for it to be highly persuasive in this case. We note, however, that the Government enters into a lease by agreement (as in the instant case) and not through exercise of eminent domain (or the threat thereof). To the extent that this single remark is probative, it supports the conclusion that Congress did not intend lease agreements to fall within the "real property in being" exception of § 3(a)(1).

*Id.* at 878.

The Federal Court in Florida focused on the foregoing portion of the *Forman* opinion in support of its holding that the CDA governs the termination of Coconut Grove's lease. Def.'s Mot., App. at 106. However, we believe that another portion of the *Forman* opinion governs the particular facts of this case.

The Federal Circuit in *Forman* went on to consult the Office of Federal Procurement Policy Act (the Policy Act), 41 U.S.C. §§ 401–430 (1994), which "created the Office of Federal Procurement Policy within the Executive Office of the President, and assigned that agency the task of devising guidelines on procurement applicable throughout the executive branch." *Forman,* 767 F.2d at 878. Section 6(a)(1) of the Policy Act presents a list of contracts to which the statute applies, which is almost identical to the corresponding section of the CDA.[4] 41 U.S.C. § 405(a)(1). It is a settled principle of statutory construction that statutes relating to the same subject matter should be construed in pari materia. 2B Norman J. Singer, Sutherland Statutory Construction §§ 51.02–51.03 (5th ed.1992). Accordingly, because § 6(a)(1) of the Policy Act also excludes contracts for the procurement of "real property in being" from its coverage, the *Forman* court read the Policy Act together with the CDA, assuming that Congress intended the phrase, "real property in being," to have the same meaning in the CDA as it had in the earlier statute. *Forman,* 767 F.2d at 878. The Federal Circuit observed:

> The legislative history of the Policy Act is more informative ... than the history of the Disputes Act. The Senate Report accompanying the bill which became the Policy Act states:
>
> Procurement under [§ 6(a)] covers property ... and construction, alteration, repair or maintenance of buildings and other forms of real property, but excludes real property in being. Accordingly, the acquisition of a fee, easements, leases, or other interests in existing buildings and land would not be subject to the policies and regulations promulgated by OFPP (citation omitted).

*Id.* at 878–79. Analyzing that excerpt of the Senate Report, the *Forman* court reasoned:

> "Acquisition of" a lease is not the same thing as "entering into" a lease. The Report's language apparently refers to the procurement of existing interests—fees, easements, leases, etc.—and not the initial

**4.** The distinction between the statutes is that the CDA places a comma before the words "other than real property in being," while the Policy Act does not.

creation of these interests. A leasehold does not exist until a lease is entered into, and by entering into a lease the Government does not acquire a pre-existing interest in the land; it establishes a new one. Thus, the Policy Act's language excluding contracts to procure "real property in being" fails to apply to newly-created lease agreements, and they fall within the purview of that statute and of the corresponding provisions of the Contract Disputes Act. This comports with Congressman Kindness' comments, since the Government can acquire a leasehold interest held by another through eminent domain, but, as mentioned supra, it creates a leasehold for itself by agreement.

*Id.* at 879 (footnote omitted).

### C. The USPS Lease With Coconut Grove is an Interest in "Real Property in Being"

■ Applying the Federal Circuit's analysis in *Forman* to the facts of this case, the court pays particular attention to the manner in which the USPS acquired its interest in the lease at issue. In this case, the government acquired an existing leasehold interest incident to its purchase of the underlying fee interest from a foreclosing creditor, thereby succeeding to an existing real property interest. The manner of acquisition appears to this court closely analogous to the acquisition of landlord's leasehold interest incident to an eminent domain taking of the underlying fee. Here, the USPS clearly did not "create[ ] a leasehold for itself by agreement." *Forman*, 767 F.2d at 879. The lease was simply an existing encumbrance on the fee title. The pleadings state and defendant does not dispute that it succeeded to existing rights and obligations of the original lessor of the property, Venture Twenty One, Inc. *See* Def.'s Mot. at 2–3; *see also* Def.'s Mot., App. at 34–41. As the successor-in-interest to the landlord's interest in a pre-existing lease, the

USPS did not establish a new property interest. Rather, the USPS procured an existing interest in real property—"real property in being"—as construed by the Federal Circuit in *Forman*. Because the language of the CDA expressly excludes such a procurement from its coverage, this court lacks jurisdiction in this case.[5]

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The Clerk of the Court is directed to transfer the case back to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1631 (1994).

IT IS SO ORDERED.

### *OPINION AND ORDER*

Pursuant to Rule 59 of the Court of Federal Claims (RCFC), defendant has moved for reconsideration of this court's Opinion and Order dated February 29, 2000. Defendant alleges that the opinion is premised upon three errors of law. After careful review and consideration of defendant's motion, the court DENIES the Motion for Reconsideration.

### I. Standard of Review

■ Rule 59, which addresses motions for reconsideration, states:

A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclu-

---

5. The Federal Circuit authorities upon which the Federal Court in Florida relied in its order transferring this case to this court are *Forman* and a decision of this court, *Richardson v. United States*, 17 Cl.Ct. 355 (1989), *aff'd*, 895 F.2d 1421 (Fed.Cir.1990)(dispute arising out of lease agreement between private party and the General Services Administration). In *Richardson*, the appli-

cability of the CDA to the lease in question was never addressed by the court. In both *Richardson* and *Forman*, the private party plaintiffs entered into lease agreements directly with the executive agencies. Here, the original lease agreement was between private parties as both landlord and tenant.

sions, and direct the entry of a new judgment.

RCFC 59(a). The decision to grant a motion for reconsideration lies within the sound discretion of the court. *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990). The court must consider such motion with "exceptional care." *Fru–Con Constr. Corp. v. United States*, 44 Fed.Cl. 298, 300 (1999).

 To prevail on a motion for reconsideration, the movant must point to a manifest error of law or mistake of fact. *Franconia Assocs. v. United States*, 44 Fed.Cl. 315, 316 (1999). The movant does not persuade the court to grant such motion by merely reasserting arguments which were previously made and were carefully considered by the court. *Principal Mut. Life Ins. Co. v. United States*, 29 Fed.Cl. 157, 164 (1993). A motion for reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court." *Fru–Con Constr. Corp. v. United States*, 44 Fed.Cl. at 300 (quoting *Bishop v. United States*, 26 Cl.Ct. 281, 286 (1992)). Rather, the movant must show: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice. *Id.*

Here, defendant alleges three errors of law. Defendant's Motion for Reconsideration (Def's. Mot.) at 1. Specifically, defendant alleges: (1) that the court improperly focused upon the procurement contract by which defendant originally acquired the lease rather than upon the lease; (2) that the court improperly interpreted the Federal Circuit's decision in *Forman v. United States*, 767 F.2d 875 (1985); and (3) that the court failed to entertain the case pursuant to its jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1994). *Id.*

## II. The Alleged Legal Errors

Defendant's first two allegations of legal error turn on the court's interpretation of the *Forman* case. The court's analysis of the Federal Circuit's opinion, which was detailed in the Opinion and Order of February 29, 2000, carefully considered the arguments that defendant now advances as legal errors. Because defendant has merely reasserted the arguments put forth in its Motion to Dismiss, the court need not address the first two alleged errors any further and directs its attention to the third allegation of legal error. *See Principal Mut. Life Ins. Co.*, 29 Fed.Cl. at 164.

Defendant asserts that the court erroneously transferred this case back to the United States District Court for the Southern District of Florida (District Court of Florida) upon determining that the instant action did not fall within the purview of the Contract Disputes Act (CDA). Defendant claims that the court failed to consider this case pursuant to its jurisdiction under the Tucker Act.

 Contrary to defendant's assertions, however, the court is not bound to hear the transferred case. Plaintiff originally filed the action against the United States Postal Service (Postal Service) in the District Court of Florida pursuant to section 409(a) of the Postal Reorganization Act of 1970(PRA), 39 U.S.C. §§ 101–5605 (1994). Section 409(a), which governs suits by and against the Postal Service, provides:

> Except as provided in section 3628 of this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service.

39 U.S.C. § 409(a). The principles of statutory interpretation require the court to construe the provision giving effect to every word and according the words their plain meaning. *See* 2A Sutherland Statutory Construction §§ 46.01, 46.06 (1992). Consistent with these interpretive guidelines, the court construes the broad language of section 409(a), particularly the phrase "jurisdiction over all actions," to include jurisdiction over contract actions. The breadth of this jurisdictional grant is limited only insofar as the contract claim falls within the purview of the CDA. *See* 28 U.S.C. § 1346(a)(2) (1994) (stating that "the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United

States ... subject to ... the Contract Disputes Act").

In transferring this case to the Court of Federal Claims, the District Court of Florida relied upon its earlier holding in *Prefab Prods., Inc. v. United States Postal Service*, 600 F.Supp. 89, 92 (S.D.Fla.1984) and subsequent supporting authorities. In *Prefab Prods.*, the District Court of Florida held "that the Contract Disputes Act preempts whatever jurisdiction the [federal courts] had in contract disputes with the Postal Service" and confers exclusive jurisdiction of such claims in the Court of Claims (now the Court of Federal Claims). *But see Spodek v. United States*, 26 F.Supp.2d 750, 753–54 (E.D.Pa.1998) (discussion of split in circuit authority regarding whether the CDA confers exclusive jurisdiction of contract disputes with the Postal Service upon the Court of Federal Claims). This court, however, has determined that the subject action involves a non-CDA contract dispute and, under the terms of the Postal Reorganization Act, the district court has original jurisdiction over the dispute.

The court's decision to transfer this case back to the District Court of Florida is informed by the Federal Circuit's opinion in *Benderson Dev. Co. v. United States Postal Serv.*, 998 F.2d 959 (Fed.Cir.1993). Deciding whether plaintiff's claim belonged in the district court or in the Court of Federal Claims in the *Benderson* case, the Federal Circuit noted that "the jurisdictional problem posed in this appeal arises because the Postal Service, in contradistinction to other federal entities, may sue and be sued on contract claims in courts other than the Court of Federal Claims." *Id.* at 962.

Citing the *Benderson* decision, the Third Circuit has stated that a contract dispute involving the Postal Service may be resolved by a district court in the exercise of its jurisdiction over matters affecting the Postal Service. *Licata v. United States Postal Service*, 33 F.3d 259, 263 (3d Cir.1994). In *Licata*, the Third Circuit concluded that the Tucker Act does not deprive district courts of jurisdiction over suits against the Postal Service stating a claim in contract. *Id.* at 263–64. Citing Federal Circuit authority, the

Third Circuit added that "a claim brought against the Postal Service in its own name is not a claim against the United States and thus is not governed by the Tucker Act." *Licata*, 33 F.3d at 263 (citing *United States v. Connolly*, 716 F.2d 882, 885 n. 4 (Fed.Cir. 1983) (in banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984)). In distinguishing between actions against the Postal Service and the United States, the Third Circuit specifically relied upon the Federal Circuit's opinion in *Connolly*, which stated:

> Congress made it clear in the Postal Reorganization Act of 1970 that the Postal Service was essentially to be separate from the government. Indeed, the Act provides that the Postal Service is empowered to sue and be sued in its own name, 39 U.S.C. § 401($l$), and that the district courts have original jurisdiction over virtually all such actions, 39 U.S.C. § 409(a).

*Connolly*, 716 F.2d at 885 n. 4 (citations omitted).

In this case, plaintiff originally sued the Postal Service in the District Court of Florida and, upon transfer to this court, plaintiff filed a substantially similar complaint against the same defendants, the Postal Service, the City of Miami, and several individually named persons. *See* Plaintiff's Amended Complaint. Upon determining that the alleged contract claim is not a CDA claim, the court returned the matter, in accordance with the cited cases, to the district court which bears original jurisdiction over cases brought against the Postal Service in its own name. *See Licata*, 33 F.3d at 263.

## III. Conclusion

For the foregoing reasons, defendant's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.