**INFORMATION SCIENCES CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Gallagher, Hudson, Hudson & Hunsberger, Inc. (d/b/a Development Infostructure or Devis), Defendant–Intervenor.**

No. 05–1342C.

United States Court of Federal Claims.

Feb. 26, 2007.[1]

---

1. On February 23, 2007, a pre-publication draft of the Memorandum Opinion and Final Order was provided under seal to the parties. The parties were instructed to propose any redactions. On February 26, 2007, this Memorandum Opinion and Final Order was published with redactions, indicated by the designation "[deleted]." The non-redacted version was also filed on February 26, 2007 under seal with the Clerk of the United States Court of Federal Claims.

William A. Shook, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, Washington, D.C., for Plaintiff.

Gregg M. Schwind, United States Department of Justice, Civil Division, Washington, D.C., for Defendant.

Robert S. Ryland, Kirkland & Ellis LLP, Washington, D.C., for Intervenor.

## MEMORANDUM OPINION AND ORDER REGARDING THE GOVERNMENT'S MOTION FOR RECONSIDERATION AND CLARIFICATION.

BRADEN, Judge.

## I. BACKGROUND.

Information Sciences Corporation ("ISC"), an information technology provider, filed a Complaint in the United States Court of Federal Claims to challenge the December 7, 2005 award of the Federal Business Opportunities Contract No. GS00T05NSC002 by the General Services Administration ("GSA") to Symplicity Corporation ("Symplicity"), alleging that GSA violated certain federal procurement statutes, regulations, and/or acted without a rational basis. Subsequently, another IT provider, Gallagher, Hudson, Hudson, and Hunsberger, Inc. ("Development InfoStructure" or "DEVIS") intervened in this action to challenge the award of the contract to Symplicity.

On September 19, 2006, the court issued a Memorandum Opinion and Final Order granting Plaintiff's and Intervenor's Motions for Judgment on the Administrative Record. *See Info. Scis. Corp. v. United States,* 73 Fed.Cl. 70 (2006). In addition, the court set aside the December 7, 2005 award and ordered GSA, if it intended to proceed with the procurement, to appoint a new Source Selection Authority ("SSA") to review the proposals pursuant to the Solicitation's terms and conditions and applicable FAR regulations, and select that offeror for award representing the "best value" to the GSA. *Id.* at 129.

On October 3, 2006, the Government filed a sealed Motion for Reconsideration ("Gov't Mot. Recon."). On October 16, 2006, the court ordered Plaintiff and the Intervenor to respond. On November 17, 2006 Plaintiff filed a sealed Response to the Government's October 3, 2006 Motion for Reconsideration ("Pl.Resp."). On November 17, 2006, the Intervenor also filed a sealed Response to the Government's October 3, 2006 Motion for Reconsideration ("Int.Resp.").

## II. DISCUSSION.

### A. Standard For Reconsideration.

United States Court of Federal Claims Rule ("RCFC") 59 provides that "reconsideration may be granted ... for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The decision to grant a motion for reconsideration is within the court's discretion. *See Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990) (holding that "the decision whether to grant reconsideration lies largely within the discretion of the [trial] court"). To prevail, the moving party must identify a manifest error of law or mistake of fact. *See Coconut Grove Entm't, Inc. v. United States,* 46 Fed.Cl. 249, 255 (2000) (holding that a movant must "point to a manifest error of law or mistake of fact").

### B. The Court's Resolution Of The Government's Motion For Reconsideration.

The Government has requested reconsideration of three issues. First, the Government asserts that the court erred in determining that the SSA violated FAR 15.308, because the SSA failed adequately to document the exercise of "independent judgment" when it changed Symplicity's technical rating from "Unacceptable" to "Acceptable." *See* Gov't Mot. Recon. at 2 (citing *Info Scis.,* 73 Fed Cl. at 119–21). Second, the Government also requests reconsideration of the court's determination that Plaintiff and Intervenor were prejudiced by the Contracting Officer ("CO")'s failure to consider the offerors' prices in establishing the competitive range, in violation of FAR 15.306(c). *Id.* at 9 (citing

*Info Scis.*, 73 Fed.Cl. at 114–18, 121–22). Finally, the Government requests that the court reconsider ordering GSA to appoint a new SSA, if it proceeds with the procurement. *See* Gov't Mot. Recon. at 8–9 (citing *Info. Scis.*, 73 Fed.Cl. at 129).

### 1. The Court Discerns No Manifest Error In Determining That The Source Selection Authority Failed Adequately To Document The Exercise Of "Independent Judgment" In Violation Of FAR 15.308.

██ The court's September 19, 2006 Memorandum Opinion and Final Order determined that the SSA violated FAR 15.308 [2] by failing adequately to document the exercise of "independent judgment," as to why the SSA accepted the Minority Report's recommendation that Symplicity's proposal should be upgraded from "Unacceptable" to "Acceptable." *See Info. Scis.*, 73 Fed.Cl. at 119–21 ("FAR 15.308 requires *evidence* of the exercise of independent judgment. Therefore, the SSA simply can agree with the reasoning of the CO or Minority Report, but only if the SSA provides an independent rationale for that agreement. . . . The SSA's reasons for relying on the Minority Report are not documented in the administrative record. Therefore, the court has determined that the SSA violated FAR 15.308.").

### a. The Government's Argument.

The Government argues that the court erred by failing to consider the entirety of evidence demonstrating that the SSA exercised independent judgment. *See* Gov't Mot. Recons. at 3–5. First, the Government

**2.** FAR § 15.308 states that:
The source selection authority's (SSA) decision shall be based on a comparative assessment of proposals against all source selection criteria in the solicitation. *While the SSA may use reports and analyses prepared by others, the source selection decision shall represent the SSA's independent judgment.* The source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs. Although the rationale for the selection decision must be documented, that documentation need not quantify the tradeoffs that led to the decision.

claims a passage from one of the documents comprising the agency's final decision on the procurement [3] establishes that "the SSA's independent rationale for relying upon the Minority Report." *Id.* at 4. In support, the Government recites the following passage from "Determination that Proposals Received from Two Offerors be Considered Technically Acceptable," in which the SSA increased Symplicity's technical rating to "acceptable:"

The minority opinion report focuses on the differences of opinion Technical Evaluation Factor 1 "Technical Approach". . . .

The minority opinion report in several cases recognizes weaknesses observed by the majority opinion, however disagrees with the severity of those weaknesses as they relate to the offeror's ability to perform.

In cases where the minority opinion agrees with the majority opinion regarding the offeror's weakness, some ambiguities in the proposal remain after discussions/negotiations and three rounds of technical clarifications. As stated in the RFP's definition for a rating of "Acceptable," the proposal meets the minimum performance or capability requirements of any evaluation sub-factors, and the offeror has responded to most of the areas under consideration and has provided enough detail to give a general view of what he intends to do and how.

The Minority report and the [Mitretek] independent technical advisor's report, although differing in some observations, complement each other, and come to the

48 C.F.R. § 15.308 (emphasis added).

**3.** In the September 19, 2006 Memorandum Opinion and Final Order, the court determined that three documents comprised the agency's final decision: (1) "Determination that Proposals Received from Two Offerors be Considered Technically Acceptable;" (2) "Recommendation for Award;" and (3) "Best Value Determination." *See Info. Scis.*, 73 Fed.Cl. at 119 n. 36; *see also* AR 121 (Determination that Proposals Received from Two Offerors be Considered Technically Acceptable); AR 122 (Recommendation for Award); AR 123 (Best Value Determination).

same conclusion as to the "acceptable" rating for the offeror.

*Id.* at 3–4 (citing AR 121 at 1194).

Second, the Government contends that other evidence further demonstrates that the SSA exercised "independent judgment." The evidence cited includes: the SSA's signature on all three documents comprising GSA's final decision; the fact that the court only determined that one of the three documents comprising the agency's final decision lacked "independent judgment;" and "considering the three documents as the agency decision, the record as a whole manifests the required independence." *Id.* at 4. The Government further argues that the evidence demonstrates that the SSA "personally reviewed" each of the reports and that she testified, under oath, that the decision belonged to her. *Id.*

Third, the Government challenges the court's interpretation of FAR 15.308 as being too narrow and at odds with a prior non-precedential decision interpreting this regulation. *Id.* at 5 ("The Court's narrow reading of FAR 15.308 is at odds with the decision in the case of *Computer Sciences Corporation v. United States,* 51 Fed.Cl. 297 (2002), where the court permitted exactly what the Court finds fault with here.").

**b. Plaintiff's and Intervenor's Response.**

Plaintiff and Intervenor respond that the Government's proffer does not support that the SSA exercised independent judgment. First, the quoted section from the "Determination that Proposals Received from Two Offerors be Considered Technically Acceptable" was not authored by the SSA, but was a "verbatim restatement" of a document prepared by the CO. *See* Pl. Resp. at 3–4; *see also* Int. Resp. at 5 ("The above quotation selected by defendant to prove the SSA's 'independent judgment' is, in reality, a ***word-for-word regurgitation*** of the 'Contracting Officer's Summary Document[.]' ") (emphasis and bold in original). Plaintiff and Intervenor also argue that since the SSA's "determination must be independent of the Contracting Officer[,] as well as of the Technical Evaluation Board, [the Government's] arguments ... mean nothing." Pl. Resp. at 4; *see also* Int. Resp. at 9. Moreover, Plaintiff

argues that the additional evidence cited by the Government "was available [to the court] at the hearing." Pl. Resp. at 5; *see also* Int. Resp. at 9.

**c. The Court's Disposition.**

Viewed in totality, the evidence cited by the Government fails to demonstrate "manifest error" in the court's determination that the SSA failed adequately to document the exercise of "independent judgment," when Symplicity's technical rating was increased from "Unacceptable" to "Acceptable." As an initial matter, the court specifically considered the passage cited by the Government, as demonstrated by the following exchange at the March 1, 2006 oral argument, when discussing AR 121 at 1194:

THE COURT: Now, it seems to me that provision [FAR 15.308] would require an analysis or justification ... to show ... why Symplicity's negatives basically were overcome. We have a conclusion.... [B]ut that's not really the relevant inquiry. The issue is defined that evaluation of the tradeoffs vis-vis Symplicity, and it's not in the document.

GOVERNMENT'S COUNSEL: Your Honor, respectfully we believe it is in the documents.

THE COURT: Where? Give me the precise language you're relying on.

\* \* \*

THE COURT: What I'm trying to figure out is *why* [the SSA] found Symplicity acceptable on the technical factors given the report. [The SSA] uses the words "can provide acceptable technical solution" when that is not what five of the seven members [of the SSEB Technical Team] said.

\* \* \*

GOVERNMENT'S COUNSEL: That is explained, Your honor, in the document we were just talking about.

THE COURT: Which document?

GOVERNMENT'S COUNSEL: [The Administrative Record] [a]t 121[.]

* * *

GOVERNMENT'S COUNSEL: If we start at page 6 of that document [AR121], [A]dministrative [R]ecord page 1194 which is where we have the source selection authority discussion of the Symplicity Proposal.

THE COURT: Okay. All right.

GOVERNMENT'S COUNSEL: What [the SSA] talked about and what you see here is a point by point identification and response to the weaknesses pointed out by the majority, and the response of the minority that [the SSA] agreed with[.]

THE COURT: All right, but let me come back and challenge you again. On [AR] 1194 what [the SSA] does is essentially regurgitate. [The SSA] says the majority says this. The minority says that. *How does that provide a rationale for a decision or show tradeoffs? There's no analysis.*

GOVERNMENT'S COUNSEL: Well, Your Honor, I think [the SSA is] allowed to adopt the analysis of [the] evaluators.

* * *

THE COURT: Well, the issue is there's no analysis on 1194. [The SSA] says the majority says X, and the minority says Y. I don't see [the SSA] saying ["]I find the one rationale to be better than the other because of factors A, B and C that I have considered.["]

Transcript of Oral Argument at 85–90, *Info. Scis.*, 73 Fed.Cl. 70 (No. 64) (emphasis added).

As this colloquy indicates, the court considered the passage cited by the Government and determined that it simply re-stated the findings of the Minority and Majority reports. At no place in GSA's Final Decision, did the SSA provide any *independent analysis or rationale* for endorsing the Minority Report's conclusions or how it considered and balanced/weighed the Majority Report. The absence of any analysis evidencing the exercise of "independent judgment" violates FAR 15.308. *See* 48 C.F.R. § 15.308 ("While the SSA may use reports and analyses pre-

pared by others, the source selection shall represent the SSA's independent judgment."); *OTI America, Inc. v. United States,* 68 Fed.Cl. 646, 657 (2005) ("A contracting officer should exercise ... discretion independently and in an informed manner.").

The other indicia cited by the Government also fail to evidence any "independent judgment" by the SSA. The Government's reference to evidence that shows that the SSA "personally reviewed each of the reports from each offeror" and that the SSA testified that "the selection decision was hers" does not provide the necessary analysis to demonstrate the exercise of "independent judgment." *See* Gov't Mot. Recons. at 4–5.

Recognizing this vacuum in the record, the Government is left with reliance on the nonprecedential decision in *Computer Scis. Corp. v. United States,* 51 Fed.Cl. 297 (2002), to support the argument that the court's reading of FAR § 15.308 is "too narrow" and that the court should afford the SSA broad deference in making a "best value" determination. *See* Gov't Mot. Recon. at 5 ("The decision in *Computer Sciences Corporation* is consistent with the very deferential standard accorded best value determinations under APA review; under this standard, the Court should permit the selection of Symplicity to stand."). The Government misreads the holding of that case.

*Computer Scis.* involved an Air Force procurement for engineering and technical support services for a program that "test[ed] and evaluat[ed] [ ] aerospace systems and [ ] develop[ed] new tactics in conjunction with the research, development, test and evaluation, and training missions at four ranges in the western United States." *Computer Scis.,* 51 Fed.Cl. at 300–01. There, a disappointed bidder protested a contract award on several grounds, including that the SSA "failed to perform a detailed comparison of past contract work" in violation of the FAR § 15.304(c)(3)(i). *Id.* at 319. Instead, the SSA assessed the bidders' past contract performance by reviewing a comparative assessment in a Proposal Analysis Report ("PAR"), prepared by the Source Selection Advisory Council ("SSAC"), based on a review of the three bidders' past contract performance

conducted by the Performance Risk Assessment Group ("PRAG"). *Id.* at 320. The United States Court of Federal Claims determined that the SSA did not need to conduct a separate review of past contract performance, because FAR §§ 15.303 and 15.308 allowed a SSA to rely on "reports and analyses prepared by others." *Id.* at 320 ("[T]he court does not interpret § 15.308 as requiring the SSA to conduct his own contract-by-contract comparative assessment. The FAR clearly states that the SSA 'may use reports and analyses prepared by others' when making his or her source selection decision, as long as said decision represents the SSA's independent judgment. Reviewing the PAR and the PRAG's report, the SSA concluded that the losing bidder's 'proposal only merited a Significant Confidence rating as opposed to a High Confidence assessment.' " (internal citation omitted)). In evaluating the bidders' past contract performance, the SSA explained the rationale for this conclusion in the administrative record:

> [T]he SSA acknowledged, as did the PRAG, that plaintiff received two Marginal performance ratings for the Program Management subfactor. These two low ratings, when added to the exceptional marks plaintiff received for the other past performance categories, *caused the SSA to agree with the PRAG that plaintiff's proposal only merited a Significant Confidence rating[.]*

*Id.* (citing the Administrative Record) (emphasis added).

The distinction is that in *Computer Scis.,* the SSA explained *why* he agreed with the conclusion of the PRAG. *Id.* ("These two low ratings, when added to the exceptional marks plaintiff received for the other past performance categories, *caused the SSA to agree with the PRAG* that plaintiff's proposal only merited a Significant Confidence rating[.]" (emphasis added)).

In this case, as the court explained in the September 19, 2006 Memorandum Opinion and Final Order:

> The SSA could have met the FAR requirement by stating: I agree with the Minority Report *because of X, Y, Z.* Instead, the SSA wrote, "The SSA ... agrees with the minority reports, and that the proposals received from ISC Corporation and Symplicity Corporation be considered acceptable." AR 1197. The SSA's reasons for relying on the Minority Report are not documented in the Administrative Record. Therefore the court has determined that the SSA violated FAR 15.308.

*Info. Scis,* 73 Fed.Cl. at 121 (emphasis in original).

For these reasons, in the court's judgment, a manifest error of law or mistake of fact was not made because the SSA failed adequately to document the exercise of independent judgment when the SSA increased the rating for Symplicity's proposal from "Unacceptable" to "Acceptable." [4]

**2. The Court Discerns No Manifest Error In The Determination That Plaintiff and Intervenor Were Prejudiced By The Contracting Officer's Failure To Consider The Offerors' Prices In Establishing The Competitive Range, In Violation Of FAR 15.306(c).**

■ Price was one of the four evaluation factors required by the Solicitation. *See Info. Scis.,* 73 Fed.Cl. at 114 ("In this case, the Solicitation established that price was one of the four evaluation factors." (citing AR 258, 264)). Accordingly, pursuant to FAR 15.305(a) and FAR 15.306(c), the court concluded that the CO was required to consider price in establishing the competitive range. *Id.* at 115 (citing *Vantage Assocs., .Inc. v. United States,* 59 Fed.Cl. 1 (2003) (discussing the import of FAR 15.305(a) in requiring that, "[a]gencies must evaluate proposals ... based on the criteria stated in the Solicita-

---

4. Although the SSA repeated the analysis and conclusions of the Minority Report verbatim, the Government's criticism of the court's use of the word "plagiarism" is well taken and the sentence at issue will be modified to read:

> The only substantive justification that the SSA provided for raising the technical ratings of ISC and Symplicity was based exclusively on analysis and conclusions from the Minority Report.

tion."); *see also Bean Stuyvesant, LLC v. United States,* 48 Fed.Cl. 303, 321 (2000) ("[T]he FAR require the agency to evaluate competitive proposals solely on the basis of the factors specified in the solicitation.... Consequently, this court may grant an offeror relief if the offeror establishes that the agency evaluated the proposal on a basis different than that announced in the solicitation[.]")). Accordingly, the court determined that the CO violated FAR 15.305(a), because price was not considered in determining the competitive range. *Id.* at 115–16. As a result, Plaintiff and Intervenor were prejudiced, because Symplicity's proposal would have likely been excluded from the competitive range, if the CO had considered price. *Id.* at 117 ("Given the Solicitation's requirement of both a price realism analysis and a price reasonableness analysis, there is a substantial chance that had the CO considered price, as required, Symplicity's proposal would not have been included[.]").

The court's conclusion was based on two factors. First, it was difficult to determine from Symplicity's initial price proposal the specific price Symplicity was proposing. *See Info. Scis.,* 73 Fed.Cl. at 117 ("The fact that the Price Team could not determine 'realistic pricing' from Symplicity's proposal evidences failure to meet the requirements of the Solicitation."); *see also* AR 2387 ("We were not able to determine realistic pricing from Symplicity for each CLIN on initial proposals, however, based on the pricing provided we attempted a best guess."); AR 2388 (indicating that Symplicity's price submissions were incomprehensible and ambiguous). Second, the CO's "best guess" of Symplicity's proposed price was $1,074,220, well below the average price of $50,806,512.78 of the seven other bidders, as well as being significantly lower than the Government's own cost-estimate of $54 million. *Id.; see also* AR 4 ("The FBO system Life–Cycle Cost Estimate ... over the potential 8–year term of the contract is approximately $53.99M."). Accordingly, the court concluded that "the CO would have likely determined that such an ambiguous and low price submission was an indication that Symplicity misunderstood the procurement." *Id.* (citing AR 264 ("Unrealistically low proposed price estimates may be

grounds for eliminating a proposal from [the] competition, either on the basis that the Offeror does not understand the requirements or the Offeror has made an unrealistic offer.")).

### a. The Government's Argument.

The Government argues that the court's conclusion incorrectly relied on the CO's estimate that Symplicity's proposed price was only $1,074,220, but concedes that the source of the error was GSA. *See* Gov't Mot. Recon. at 10. Nevertheless, the Government explains that Symplicity's actual proposed price was $[deleted] and that it could have been calculated from the initial proposal. *Id.* Therefore, the Government argues "[i]n view of Symplicity's actual initial price of over $12 million, there is no evidence that GSA would have excluded Symplicity had the contracting officer excluded proposals based on price." *Id.*

### b. Plaintiff's and Intervenor's Opposition.

Plaintiff responds that "[t]he Court was well aware, during its detailed consideration of this case, of GSA's inability to understand Symplicity's proposal" and that the "Court's decision on this point is correct and offers no basis for reconsideration." Pl. Resp. at 9–10. Likewise, the Intervenor also argues that the court's decision was not "manifest error," because it was based on the underlying fact that "the agency *did* analyze Symplicity's initial pricing proposal and concluded that it was impossible to find the proposal to be realistic[,]" because the agency could only guess at Symplicity's proposed price. *See* Int. Resp. at 11 (emphasis and bold in original). The Intervenor also contends that the Government is "simply rehash[ing] its previous arguments regarding alternative hypothetical outcomes that might have occurred if the Contracting Officer had decided not to violate the law." *Id.* at 12.

### c. The Court's Disposition.

The Government's post-hearing discovery that GSA made a mistake in calculating Symplicity's proposed price further substantiates the court's conclusion that Plaintiff and Intervenor were prejudiced by the CO's actions in this procurement. *See* TR at 134

(Government counsel stating "I'm looking now at [Symplicity's] initial price proposal. . . . [I]t's not very clear here, but prices were provided. . . . There were prices. They may not have lined up perfectly with the government plan, but they did provide prices."). The agency's Price Team reviewed Symplicity's price proposal and, recognizing its confusing nature, made its "best guess" as to the proposed price, $1,074,200. *See Info. Scis.* at 117. This was the price that was provided to the CO to use in determining the competitive range. *Id.* Given the prices that were before the CO at the time he determined the competitive range, the court's determination is not erroneous, because the CO likely would have excluded Symplicity from the competitive range based on its low price proposal. *Id.* It is not the role of the court to speculate on whether the Price Team had knowledge of Symplicity's actual price. Instead, the court must review the actions of the CO based on the information available at the time of the decision. Accordingly, the court discerns no manifest error in concluding that Plaintiff and Intervenor were prejudiced by the CO's decision not to consider price in establishing the competitive range.

### 3. The Court Has Discretion To Order the Appointment Of A New SSA.

Assuming *arguendo* that the SSA failed adequately to document the exercise of "independent judgment," the Government requests that the court reconsider directing GSA to set aside the procurement and appoint a new SSA to review the proposals and make the "best-value" determination, because "absen[t] evidence of bad faith, bias, or intent to injure either ISC or Devis on the part of the SSA, there is no reason to require the appointment of a new selection official." *Id.* at 8 (citations omitted).

Plaintiff responds that the Government failed to cite any authority that restricts the court from ordering the assignment of a new SSA in the absence of bad faith. *See* Pl. Resp. at 7. Plaintiff also argues that court may require the assignment of a new SSA when "the history of the procurement" warrants it. *Id.* Intervenor also argues that there is no requirement that the court's rem-

edy be "grounded on a finding of fraud or bad faith by the SSA." Int. Resp. at 15. Intervenor contends that the court's remedy was appropriate because "of the gravity of the law and the fact that it strikes so deeply into the fundamental purpose of appointing an SSA . . . to make the award decision rather than relying on the contracting officer to make the decision." *Id.* at 14.

The Government does not challenge the court's authority to require the appointment of a new SSA. *See* Gov't Mot. Recon. at 8–9. The Government, however, argues that absent evidence of bad faith on the part of the SSA, such a remedy is unnecessary. *Id.* at 8. The court determined that the only way to ensure that Plaintiff and Intervenor receive a fair, unbiased evaluation of their proposals is either to require the agency to resolicit bids or to order GSA to establish a competitive range and appoint a new SSA properly to evaluate existing technical and price evaluations. *See Info. Scis.*, 73 Fed.Cl. at 128. In the court's judgment, electing a remedy that was less intrusive does not evidence a manifest error of law or mistake of fact.

### C. The Court's Resolution Of The Government's Motion For Clarification.

The Government also requests that the court clarify "that (1) GSA need not revisit the competitive range determination; [and] (2) the SSA may rely on the existing technical and price evaluations of the four proposals included in the competitive range and select the proposal that represents the best value to the Government." Gov't Mot. Recon. at 17.

The court's September 19, 2006 Memorandum Opinion and Final Order stated:

[T]he court GRANTS Plaintiff's and DEVIS' requests for injunctive relief, as follows:

1. The General Services Administration's December 7, 2005 award of Contract No. GST00T05NSC0002 is hereby set aside.

2. If the General Services Administration would like to proceed with this procurement, it is hereby ordered to appoint a new Source Selection Authority to review the Proposals received in

response to Request for Proposals No. TQN–04–RA–0001, *pursuant to the Solicitation's terms and conditions and applicable FAR regulations,* and to select that offeror for award deemed to represent the best value to the procuring agency.

*Info. Scis.,* 73 Fed.Cl. at 129 (emphasis added).

The court clarifies that, if GSA would like to proceed with the procurement, it *must* do so "pursuant to the Solicitation's terms and conditions and applicable FAR regulations." *Id.* Since the court has determined that the SSA did not document the exercise of "independent judgment," the CO failed to consider price in establishing the competitive range, and Plaintiff and Intervenor were prejudiced, GSA must establish a new competitive range that comports with the requirements of the Solicitation and the FAR. Accordingly, GSA must reconsider the competitive range determination. Once GSA establishes a competitive range that complies with the terms of the Solicitation and the FAR, a newly appointed SSA may utilize existing technical and price evaluations to determine which proposal represents the "best value" to the agency.

## III. CONCLUSION.

For the above stated reasons, the Government's October 3, 2006 Motion for Reconsideration is granted-in-part and denied-in-part.

**IT IS SO ORDERED.**